Richardson, Ch. J.,
delivered the opinion of the court:.
The Act of' August 5, 1861, chapter 45 (12 Stat. L., 292), laying a direct tax of $20,000,000 upon the United States, apportioned to the State of South Carolina $363,570.67, and, as subsequently amended, made provisions for the assessment and collection of the same. (Act of June 7, 1862, ch. 98, 12 Stat. L., 422; Act of January 6, 1863, ch. 21, 12 Stat. L., 640; Resolution of February 25, 1867, No. 28, 14 Stat. L., 568.)
Among other things it was provided that said direct tax should be assessed and laid on the value of all lands and lots of ground, with the improvements and dwelling-houses, to be enumerated and valued at the rate each of them was worth in money on April 1,18 62
That in making such assessment due regard should be had to any valuation that may have been made under the authority of the State at any period nearest to said 1st day of April.
That when any State was declared to be in insurrection so that the provisions of the law for levying and collecting direct taxes could not be peaceably executed, the taxes should be apportioned and charged upon all the lands and lots of ground situate therein as said lands or lots of ground were enumerated and valued under the last assessment and valuation thereof made under the authority of said State, previous to the first day of January, 1861; and each and every parcel of said lands, according to said valuation, was declared to be charged with the payment of so much of the whole tax as shall bear the same direct proportion to the whole amount of the direct tax apportioned to said State as the value of said parcels of land shall bear respectively to the whole valuation of the real estate in said State, according to the assessment and valuation made under the authority of the same, and in addition thereto apenalty of 50 per cent, of said tax should be charged thereon. (Act of June 7,1862, § 1.) *41 The President was to declare on or before the first day of' July then next, by proclamation, what States were in insurrection, and thereupon the several lots or parcels of land became chargeable, respectively, with their respective portions of said, direct tax, and together with the penalty constituted a lien thereon, without any further proceeding whatever. Act of June 7, 1862, § 2.)
A board of tax commissioners was required to be appointed by the President for each insurrectionary State, for the assessment and collection of the direct taxes therein. (Act of Jume 7, 1862, § 5.)
By section 13 of the act of June 7, 1862, it was enacted as-follows:
“ Sec. 13. And be it further enacted, That in case the records, of assessments and valuation of the lots of land mentioned in the first section of this act shall be destroyed, concealed, or lost, so as not to come within the possession of the said boards of commissioners, they shall be authorized to take evidence of' the same, or to value and assess the same in their own judgment upon such evidence as may appear before them. And no mistake in the valuation of the same, or in the amount ot tax thereon, shall, in any manner whatever, affect the validity of' the sale of the same or of any of the proceedings preliminary thereto. ”
On the 16th of August, 1862, the President issued his proclamation declaring South Carolina and other States in insurrection. (12 Stat. L., 1262.)
A board of three direct-tax commissioners was appointed for that State, as required by law, who immediately entered upon their duties and made the following record:
“ Beaufort, Nov. 3,1862.
" Resolved, That inasmuch as the records of the last assessment and valuation of the lauds and lots of ground made under the authority of the State of South Carolina previous to the first day of January, A. D. 1861, are so concealed as not to come within the possession of the commissioners, therefore, upon the evidence taken and which has come before us, the said commissioners, the said assessment and valuation of the whole real estate in said State we find to be and do fix and establish the same at the sum of thirty millions eight hundred and thirty-three thousand three hundred and twenty-two dollars ten cents and four mills ($30,833,322.10^).
“ Resolved further, That there be assessed upon the lands of the said State the sum of two dollars ad valorem for each one *42 hundred dollars’ valuation, and that there be assessed upon the city, town, village, and borough lots the sum of eighty cents ad valorem on each one hundred dollars of valuation.
####*##
“ A. D. SMITH,
“W. E. Wording.
“ Vi. Henry Brisbane,
“ Commissioners.
■ “ Jno. C. Alexander, Cleric.”
Thereupon they proceeded to value the land of the claimant’s intestate at $6,000 and to assess the proportional tax thereon. The correct amount of the tax was easily determined by a simple mathematical calculation, since the statute had declared that it should bear the same proportion to the whole direct State tax as the valuation of the particular parcel of ground bore to the whole valuation ot the real land in said State. Stated mathematically the problem' is as follows: 30,833,322.10^-: 6,000:: 363,570.67: x (tax on claimant’s land). This gives $70.74 as the tax which, under the law, the claimant’s land was chargeable.
The commissioners, however, did not leave the tax in that absolute equality throughout the State which the statute fixed it, but proceeded upon a rule of their own, and assessed upon city, town, village, and borough lots 80 cents on each $100 of valuation, while upon other lands they assessed $2 on each $100 of valuation. The land of claimant’s intestate was assessed at the latter rate, and if all. the lands had been so assessed the aggregate amount would have been much greater than the whole tax. Instead of assessing the lot at $70.74, they assessed it at $120 for the tax, and for the penalty, instead of $35.37, they assessed $60.
Subsequently they sold the land to pay the taxes thus erroneouslyiassessed, and it was bought in by the United States under the provisions of the law. When the claimant’s intestate went to the. Treasury to redeem it, as he had a right to do, he was compelled to pay, and did pay, the erroneous amount assessed for tax and penalty, with interest thereon to the time of payment, and the cost. This amounted to $490.89. The correct amount for which his land was liable under the statute was $287.70, made up as follows: Correct tax, $70.74; penalty, $35.37; interest to time of sale, $6.50; cost, $27; interest *43 subsequently to time of redemption, $148.09. There was there1fore illegally collected of him the sum of $203.19.
' That the commissioners exceeded their powers and acted without authority of law in substituting an assessment different from that laid down by the act is manifest. They were authorized to fix the valuation of each and all the tracts of land in the State, and the statute fixed the rate with absolute equality. They had no power to fix any rate at all. Their duty was, by mathematical calculation, to determine the amount assessed upon each lot of tract of land in accordance with the problem prescribed by statute and Dot upon a different basis set up by themselves.
The effect of this grave error of the commissioners, and the subsequent errors which grew out of it, the increase of the penalty and the additional interest charged to the claimant, is the real question at issue in this case.
For the claimant it is urged that such an error so far vitiates the proceedings that no part of the collection was valid, and. that he has a right to recover back all that was collected of him. Many judicial decisions have been referred to as sustaining that view of the proceedings. But those cases all. arose under statutes of the States which are very different from those of the United States, under which the claimant’s lands were sold. In determining this question we must keep to the acts of Congress, and not be drawn away by decisions upon different language of State laws, which confuse more than they enlighten the subject before us.
The act of June 7,1862, section 13, above cited, expressly provides that u no mistake in the valuation of the same [the land], or in the amount of the tax thereon, shall in any manner whatever affect the validity of the sale of the same or of any of the proceedings preliminary thereto. ”
The claimant’s counsel concedes that, under this provision a sale would be valid and the title to the land would pass, notwithstanding any mistake in the proceedings; but he insists that the provision goes no further and does not validate the assessment nor prevent him from taking advantage of the error to recover back the whole amount assessed and collected. In this view we cannot concur. The statute expressly provides that “ no mistake in the amount of the tax shall in any manner whatever affect any of the proceedings preliminary” to the sale. *44 This meets the claimant’s case precisely, and prevents the whole assessment and levy from being declared void.
Still the fact remains that there has been illegally collected of the claimant’s intestate without warrant of law, under the direct-tax laws, the sum of $203.19. That sum may now be refunded to his administrator, under the permanent appropriation made by section 3689 of the Eevised Statutes, page 724, taken from the Resolution of February 25,1867, section 4 (14 Stat. L., 568). (Harrison’s Case, 20 C. Cls. R., 176; Thompson’s Case, 20 id., 270.) The provisions of the Eevised Statutes are as follows:
“PERMANENT ANNUAL APPROPRIATIONS.
# * * * # . * *
“ Seo. 3689. There are appropriated, out of any moneys in the Treasury not otherwise appropriated, for the purposes hereinafter specified, such sums as may be necessary for the same, respectively:
“Eefunding taxes illegally collected under the direct-tax laws;
“ To refund to persons money collected from them without warrant of law, as in payment of dues under the direct-tax laws.”
Judgment will be entered for the claimant in the sum of $203.19.